IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROSE PAPRAKIS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SKULLCANDY, INC., S. HOBY DARLING, DOUG COLLIER, HEIDI O'NEILL, JEFF KEARL, SCOTT OLIVET, GREG WARNOCK, RICK ALDEN and JASON HODELL,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:16-cv-810-DB<br><br>District Judge Dee Benson |

Before the court are two applications for an award of attorneys' fees and expenses, the first filed by Plaintiff Rose Paprakis ("Paprakis") (Dkt. No. 16), and the second filed by Plaintiff Karen Bernicke ("Bernicke").[1] (Dkt. No. 26.) The court held a hearing on the motions on April 27, 2017. James Wilson appeared on behalf of Paprakis and Michael Rosner appeared on behalf of Bernicke. David Scofield appeared as local counsel for both Plaintiffs. Monica Call appeared on behalf of all Defendants, and Matthew Balte appeared on behalf of Defendant Skullcandy, Inc. ("Skullcandy"). At the conclusion of the hearing, the court took the matter under advisement. Now, having been fully informed, the court issues the following Memorandum Decision and Order.

---

[1] Bernicke is not a named plaintiff in this litigation. Plaintiffs each filed separate complaints in this court asserting essentially identical claims. Plaintiffs then agreed in a private contractual agreement to litigate the claims against Defendants in this action and to split any attorneys' fees awarded in this action.

Background

In February 2016, the Board of Directors of Skullcandy began exploring the possibility of selling the company. (Dkt. No. 31 at viii.) During the next few months, Skullcandy representatives met with potential suitors and shared information on a confidential basis. (*Id.*) In early May 2016, Skullcandy received nonbinding indications of interest from four identified suitors. (*Id.*) After continued negotiations, on June 23, 2016, Skullcandy entered into a merger agreement with Incipio, LLC ("Incipio"), the highest bidder, at the price of $5.75 per share. The Incipio merger agreement contained a "go-shop" provision and a "fiduciary out" provision, which allowed Skullcandy to continue to explore other options and accept a better offer should one emerge. (Dkt. No. 31 at ix.)

On June 24, 2016, one day after the announced merger agreement and prior to the filing of the Complaint in this action, Mill Road Capital ("Mill Road") submitted an indication of interest to acquire Skullcandy at $6.05 per share. (*Id.*) Throughout the "go shop" period, Skullcandy also contacted 98 potential bidders and entered into non-disclosure agreements with eight potential bidders to facilitate due diligence efforts regarding other possible mergers. (*Id.*) At the end of the "go shop" period, on July 28, 2016, the Skullcandy Board of Directors determined that Mill Road's proposal was superior to Incipio's original offer and, as such, terminated the merger agreement with Incipio. (*Id.*)

A bidding war ensued. Incipio returned on August 2, 2016, with a revised offer to purchase Skullcandy for $6.10 per share. (*Id.*) On August 14, 2016, Mill Road submitted a revised indication of interest for $6.25 per share. (*Id.*) After further negotiations, on August 17, 2016, Mill Road submitted another offer at $6.35 per share. (*Id.* at xi.) On August 18, 2016,

Skullcandy amended its disclosures to inform the stockholders of the Mill Creek offer. (Dkt. No. 16 at 6.) On August 23, 2016, Incipio indicated that it did not intend to submit another offer. (Dkt. No. 31 at xi.) Skullcandy then accepted Mill Road's final tender offer of $6.35 per share. (*Id.*)

On September 29, 2016, the Mill Road tender offer closed with 80% of the outstanding shares being tendered, not including the 9.8% held by Mill Road and its affiliates. (*Id.*) As of October 3, 2016, all of the previously outstanding shares of Skullcandy stock (other than those owned by Mill Road and its affiliates) were cancelled and converted into the right to receive $6.35 per share. (*Id.*) As such, all of Skullcandy's shareholders, apart from Mill Road and its affiliates, received $6.35 per share cash value for their outstanding Skullcandy stock.

Paprakis filed this action on July 19, 2016, just before the end of the "go shop" period. Bernicke filed her action on July 26, 2016, immediately following the termination of the "go shop" period. (*See* 2:16-cv-831-DN.) Both actions included essentially the same claims and requests for relief. Plaintiffs alleged that Incipio's original offer was unreasonably low and that Skullcandy's disclosures were insufficient. (Dkt. No. 2.) With respect to disclosures, Plaintiffs specifically asserted that Defendants failed to disclose sufficient information regarding interested parties' bids, potential conflicts of interest, and Skullcandy's financial projections. (*Id.* at ¶37.)

Following the filing of their Complaints, Plaintiffs engaged with Defendants to attempt to encourage a higher sales price and additional disclosures. On August 5, 2016, Plaintiffs wrote to Defendants to reiterate their pre-lawsuit demand of $7.50 per share and to demand additional disclosures, including information regarding the time frame of negotiations, financial interests of Skullcandy's financial advisor, the status of nondisclosure agreements, and Skullcandy's

financial agreements. (Dkt. No. 16 at 3-4.) That same day, Defendants amended the Schedule 14D-9 filed with the Securities and Exchange Commission, which addressed the majority of Plaintiffs' concerns. (*Id.* at 4-5.) However, the additional disclosures did not include Skullcandy's projected free cash flows. As such, on August 8, 2016, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction to demand disclosure of the projected free cash flows. (Dkt. No. 6.) On August 9, 2016, Defendants again amended their disclosures to include the projected free cash flows. Plaintiffs then voluntarily withdrew their motion as moot. (Dkt. No. 8.) Plaintiffs do not allege that any conflicts of interest or inappropriate behavior by Skullcandy representatives or its Board of Directors were discovered as a result of the additional disclosures, or at any other time during the pendency of this action.

On November 7, 2016, Plaintiffs submitted to the court a Joint Stipulated Motion to Dismiss Action as Moot and Retain Jurisdiction to Determine Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, stating that Paprakis was "to submit a motion for an award of attorneys' fees and reimbursement of expenses with the cooperation of, and also on behalf of, Ms. Bernicke and her counsel." (Dkt. No. 11 at 3.) Following entry of the associated stipulated proposed order, Plaintiffs were unable to agree on the motion for award of fees and costs. Paprakis submitted her Mootness Application for an Award of Attorneys' Fees and Expenses on December 29, 2016. (Dkt. No. 16.) The court then granted Bernicke's Motion to File Separate Motion for Award of Fees, (Dkt. Nos. 23, 25,) and Bernicke filed her Application for an Award of Attorneys' Fees on January 23, 2017. (Dkt. No. 26.)

4

Discussion

In the Tenth Circuit, "[a] claim for attorneys' fees may remain viable even after the underlying cause of action becomes moot." *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1123 (10th Cir. 2016). But "[u]nder the American Rule, absent a statute or enforceable contract, a prevailing litigant is ordinary not entitled to collect reasonable attorney fees from the loser." *Id.* (citations omitted). Even so, "federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require." *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1480, 1481 (10th Cir. 1993). As in other jurisdictions, the Tenth Circuit has "recognized a limited number of equitable exceptions to the American Rule," including the "common fund exception" and the "common benefit exception." *Schell*, 814 F.3d at 1123. The party requesting an exception to the American Rule carries the burden to establish an exception by a preponderance of the evidence. *See id.* at 1126. "In the absence of a statute or enforceable contract, attorney fees should be awarded sparingly." *Aguinaga*, 993 F.2d at 1485.

*The Common Fund Exception*

The common fund exception to the American Rule is applicable where the plaintiff's successful litigation creates "a common fund, the economic benefit of which is shared by all members of the class." *Id.* at 1482. Fee shifting may be justified under those circumstances because "to allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." *Id.* at 1481.

For example, in *Mills v. Elec. Auto-Lite Co.*, the United States Supreme Court approved an award of attorneys' fees where plaintiffs had established a violation of the security laws by

their corporation and successfully set aside a corporate merger. 396 U.S. 375, 392 (1970). The court reasoned that, because the costs of the lawsuit were "incurred for the benefit of the corporation and the other shareholders," an award of fees was appropriate. *Id.*

Plaintiffs here claim that they are entitled to an award of attorneys' fees pursuant to the common fund exception because they caused a $0.60 per share increase in the Skullcandy stock price, resulting in a common fund of $17,280,131.[2] Plaintiffs have failed to carry their burden to show that the common fund exception to the American Rule should apply here. First, Plaintiffs have failed to show that the $0.60 per share increase was caused by Plaintiffs' lawsuits. An offer $0.30 per share above the original Incipio offer, the initial offer from Mill Road, was made prior to the filing of either Plaintiff's lawsuit. The facts before the court demonstrate that Skullcandy and its Board of Directors acted diligently to seek and obtain better offers throughout the "go shop" period, including prior to Plaintiffs' lawsuits, and no evidence has been submitted to the court to indicate that they would not have done so absent Plaintiffs' lawsuits. Plaintiffs have not presented evidence of self-dealing, or even any motivation for the Board to engage in self-dealing, as all Board members were cashed out with the merger, were not employed by Skullcandy or Mill Road post-merger, and had every incentive to obtain the highest sales price for themselves and the other Skullcandy shareholders. The court does not find that Plaintiffs' lawsuits caused an increase in sales price, particularly in light of the timing of the initial Mill Creek offer.

Second, Plaintiffs seek recovery from Defendant Skullcandy, which is now a wholly owned subsidiary of Mill Road. All of the shareholders who allegedly benefited from Plaintiffs'

---

[2] Plaintiffs disagree regarding the amount of the appropriate recovery, but both argue that the increase in stock price is the basis for a large percentage of the attorneys' fees requested.

efforts to increase the stock price were cashed out prior to October 3, 2016. If Skullcandy were required to pay attorneys' fees now, an entirely new group would be required to bear the burden of the litigation for which the previous group of shareholders derived benefit. Although in some theoretical way, Skullcandy itself may have benefited from selling at a higher price, the court cannot say that such a distant benefit is sufficient to satisfy the practical equitable principles required by the common fund exception. Thus, even if Plaintiffs had established causation between their suits and the increase in sale price, the equitable principles underlying the common fund exception would not be served from requiring Skullcandy to pay Plaintiffs' attorneys fees now. *See Schell*, 814 F.3d at 1107.

*The Common Benefit Exception*

The common benefit exception applies where 1) "the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class," and 2) "where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Aquinaga*, 993 F.2d at 1482. "A substantial benefit must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest." *Mills*, 396 U.S. at 396. For an omitted disclosure to be material, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Connett v. Justus Enters.*, 68 F.3d 382, 385 (10th Cir. 1995) (citation omitted).

Plaintiffs claim that they are entitled to attorneys' fees under the common benefit exception for demanding additional disclosures from Skullcandy throughout the negotiation and merger process, particularly the disclosure of the free cash flow projections. Plaintiffs have failed to carry their burden to establish an entitlement to attorneys' fees under the common benefit exception. First, Plaintiffs have not demonstrated that their litigation conferred a *substantial* benefit on the shareholders. Apart from citing cases in which, under different facts, free cash flow projections were material to the decision-making process of shareholders, Plaintiffs have supplied the court with no evidence of how the free cash flow projections influenced the shareholders' decision-making process here. The free cash flow projections in the supplemental disclosures were consistent with the other extensive financial disclosures included in Skullcandy's 60 single-spaced pages of original disclosures regarding the transaction. (*See* Dkt. No. 31 at xi.)

Plaintiffs have also failed to show that the other disclosures they allegedly caused—disclosures that Skullcandy's financial advisor did not have any conflicts of interest, that the Skullcandy Board of Directors did not have any conflicts related to post-merger employment, and that the standstill provisions in the nondisclosure agreements would terminate upon entering the merger agreement—were more than technical in consequence. Again, other than citing Delaware cases in which disclosures of conflicts of interest or information regarding standstill provisions were of substantial benefit to shareholders under different circumstances, Plaintiffs have provided no evidence to the court that such disclosures could have been or were of any use to the Skullcandy shareholders, particularly where Skullcandy had already issued substantial, consistent disclosures regarding the proposed transaction.

Second, Plaintiffs have failed to show that an attorneys' fees award would operate to spread the costs proportionately among the members of the ascertainable class—the Skullcandy shareholders. "[A] common benefit exception is only permissible where the costs will be spread across the plaintiff class and not shifted as an added penalty to defendants." Schell, 814 F.3d at 1126. "The common benefit exception, by definition, requires that the benefit received by the prevailing plaintiff and the benefit received by the group to which fees are shifted be 'common' to both." *Aquinaga*, 993 F.2d at 1483. As with the common fund exception, an award pursuant to the common benefit exception would not satisfy the demands of equity here. Plaintiffs claim to have conferred a benefit upon the former public shareholders of Skullcandy shares, all of who were cashed out in the transaction. However, Skullcandy is now owned by Mill Road, not the class of former shareholders. As such, any award of fees against Skullcandy would impermissibly shift the fee burden to Skullcandy as a penalty, rather than spread the costs among members of the purportedly benefited class.

## Conclusion

Plaintiffs have failed to establish an entitlement to attorneys' fees pursuant to any exception to the American Rule. As such, Plaintiffs' Motions for award of attorneys' fees and costs are DENIED.

DATED this 14th day of June, 2017.

BY THE COURT:

Dee Benson
United States District Judge